IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ONYX WEALTH ADVISORS, INC., | § | |
| Et al. | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | No. 3:13-CV-3426-P |
| | § | |
| INDIAN HARBOR INSURANCE, | § | |
| Et al. | § | |
| Defendants. | § | |

**ORDER**

Now before the Court is Calsurance and Knowles' ("Defendants") Amended Motion for

Summary Judgment, filed on July 10, 2015.  Doc. 60.  Onyx Wealth Advisors, Inc. et al.

("Plaintiffs") filed a response on July 31, 2015.  Doc. 63.  Defendants filed a reply on August 14,

2015.  Doc. 74.  Also before the Court is Defendants' Motion to Exclude Testimony of Plaintiffs'

Expert Cynthia Claybrook and Memorandum in Support, filed on March 30, 2015.  Doc. 42.

Plaintiffs did not file a response.  After reviewing the parties' briefing, the evidence, and the

applicable law, the Court GRANTS the motion for summary judgment and finds the motion to

exclude MOOT.

### I.    Background

At the beginning of 2012, Plaintiffs—which are a group of related entities—were insured

under a policy issued by the Gotham Insurance Company.  As a result of one of the entities filing

for bankruptcy, the coverage provided to all of the entities lapsed.

The remaining entities then sought a new policy.  Alan Deetjen, on behalf of Plaintiffs,

contacted Steve Knowles, a licensed insurance agent for Calsurance.  Deetjen allegedly asked that

the Focus Group, one of the related entities, receive coverage as a "named insured."

Calsurance and Knowles sought coverage from several carriers, but Indian Harbor Insurance ("Indian Harbor") was the only company contacted who would consider issuing a policy insuring all of the Plaintiffs' entities.  Plaintiffs allege that Calsurance and Knowles then notified Deetjen that the requested insurance had been obtained through Indian Harbor.  When Indian Harbor eventually issued the policy, however, it did not include coverage for the Focus Group as a named insured.  Plaintiffs allege that Defendants misrepresented to Plaintiffs that all the requested insurance coverage, including coverage for the Focus Group, had been procured.

Plaintiffs brought suit against Defendants to recover losses that they assert should have been covered.  Specifically, Plaintiffs seek defense costs arising out of Oklahoma litigation against the Focus Group and its advisors.

Defendants now move for summary judgment, arguing that even if the misrepresentation did occur, Plaintiffs have no evidence to support at least one element of their claims.

## II.    Motion for Summary Judgment

Under Fed. R. Civ. P. 56(a), courts "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[1]  "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*  The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  To determine whether summary judgment is proper, the courts view the record and all reasonable

---

[1]This subdivision "carries forward the summary judgment standard expressed in former subdivision (c)," with only one non-substantive change – replacing "issue" with "dispute." Fed. R. Civ. P. 56 advisory committee notes (2010 amend.).  Despite the 2010 amendments, the summary judgment standard "remains unchanged." *Id.*

inferences drawn from the record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Once the moving party has carried its initial burden, the party opposing the motion must come forward with competent summary judgment evidence showing the existence of a genuine fact dispute. *Id.* at 586-87. The party defending against a summary judgment motion cannot defeat the motion without providing specific facts demonstrating a genuine dispute of material fact. *Anderson*, 477 U.S. at 247–8; *accord* Fed. R. Civ. P. 56(c). Mere assertions of a factual dispute unsupported by probative evidence will not prevent summary judgment. *See Anderson*, 477 U.S. at 249-50; *accord* Fed. R. Civ. P. 56(c). In other words, "conclusory statements, speculation, and unsubstantiated assertions cannot defeat a motion for summary judgment." *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010). Courts have no duty, furthermore, to search the record for a material disputed fact. *See id.*; *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012).

## III.    Analysis

In Plaintiffs' First Amended Complaint, they allege claims under the Texas Deceptive Trade Practices Act, the Texas Insurance Code, and for the torts of negligence, and negligent misrepresentation. Doc. 27 at 17–19. Plaintiffs' later reiterate, in their response to Defendants' motion for summary judgment, that their claims "arise from Defendants' failure to procure the requested coverage for the Focus Group . . . under the [Indian Harbor] Policy." Doc. 64 at 19.

To prove damages resulting from an insurance agent's failure to procure requested insurance coverage, a plaintiff must prove that the coverage sought was actually available and would have provided coverage for its losses. *Metro Allied Ins. Agency, Inc. v. Lin*, 304 S.W.3d 830, 836 (Tex. 2009). To make this showing, they must first prove "that the loss is one insured

against in some policy." *Stinson v. Cravens, Dargan & Co.,* 579 S.W.2d 298, 299–300 (Tex. App.—Dallas 1979, no writ); *see also, Nacol & Co. v. ADT Sec. Servs., Inc.*, No. 4:10-CV-00137, 2011 WL 1542716 at *5 (S.D. Tex. Apr. 21, 2011); *Guidry v. Envtl. Procedures, Inc.*, 388 S.W.3d 845, 855 (Tex. App.—Houston [14th Dist.] 2012, pet. denied). Courts have applied this requirement to negligence and DTPA claims. *See Lin*, 304 S.W.3d at 835–36. This same logic applies to the alleged Texas Insurance Code violations, to the negligent misrepresentation claim, and to the breach of contract claim.

If an insured is able to show that some policy is actually available, he must then show that the coverage requested would have insured against his losses, which in this case requires the Court to analyze an insurer's duty to defend. *See Lin*, 304 S.W.3d at 835-36.

### A. Was the Coverage Sought Actually Available?

Defendants argue that there is no evidence that any insurance policy was available that would have covered the Focus Group as a named insured. Doc. 61 at 18. Defendants recognize that some insurers were willing to cover most of Plaintiffs' entities but that there is no evidence that any insurer was willing to provide the type of coverage that Plaintiffs were seeking for the Focus Group—coverage as a named insured. *Id.* Plaintiffs disagree with Defendants' assessment and point to the Indian Harbor Policy as well as to statements made by Indian Harbor employee Nick Chen as proof that such a policy was available. Doc. 64 at 32. Specifically, they point to Chen's testimony that he reviewed the financial information for the Focus Group and that it contained inconsistent information, which raised red flags to him. Doc. 71 at 93.

The two cases that most develop Plaintiffs' burden to show that coverage was actually available are *Lin* and *Nacol.* 304 S.W.3d 830; 2011 WL 1542716. In *Lin*, the defendant insurance agency admitted that it negligently failed to obtain the requested policy, but the agency also

asserted that the plaintiff had not proven that the coverage sought was available.  304 S.W.3d at

833.  In response, the plaintiff pointed to the testimony of the defendant's insurance agent that the

type of coverage the plaintiff was seeking was "rarely" included.  *Id.* at 836–37.  The court found

that this statement alone was insufficient evidence of causation because the jury would have had

to guess at the existence of such a policy.  *Id.* at 838.

In *Nacol v. ADT*, a court in the Southern District of Texas pointed to the kind of evidence

that is sufficient for a plaintiff to prove this element.  2011 WL 1542716 at *5.  In that case, a

security firm asserted that a plaintiff did not present any evidence that he could have procured

insurance that would have covered his loss from a robbery.  *Id.*  But the court distinguished the

facts of *Lin* because the *Nacol* plaintiff presented more evidence.  *Id.*  First, the court noted that

the plaintiff later obtained the type of insurance that he had earlier sought.  *Id.*  Second, the

plaintiff's expert testified that the insurance the plaintiff had been seeking provided for losses due

to robbery, which was type of coverage the plaintiff desired.  *Id.*

In Defendants' motion for summary judgment, like the defendants' in *Lin* and *Nacol*,

Defendants assert that there is no evidence that any policy was available that would provide the

type of coverage that Plaintiffs' sought.  Doc. 61 at 18.  Furthermore, Defendants state that Chen's

testimony is directly contrary to Plaintiffs' argument and that it is actually proof that the coverage

Plaintiffs sought was not available to them.  Doc. 74 at 7.

Chen testified that he reviewed the financial information for the Focus Group and that it

contained inconsistent information, which raised red flags to him.  Doc. 71 at 93.  Chen then

testified that such red flags "would have prevented issuance of named insured status for Focus

Group" and that there were *no other reasons* why the Focus Group would not have received

coverage. *Id*. at 94. As summary judgment requires,[1] the Court interprets this statement in favor of the non-movant and reasonably infers that if the relevant financial information had been attached, Indian Harbor would have provided the type of coverage Plaintiffs sought. Chen's statement, therefore, is some evidence that the Focus Group could have been covered by some policy.

The Court therefore concludes that Plaintiffs have met their burden and denies summary judgment as to this argument.

### B. Would the Coverage Requested Have Insured Plaintiffs' Losses?

Now that Plaintiffs have met their burden as to whether the coverage sought was actually available, Plaintiffs must show that the coverage they requested would have insured Plaintiffs' losses. *See Lin*, 304 S.W.3d at 835-36. "[T]he initial burden lies with the insured to demonstrate that the claims levied against it potentially fall within the insurance policy's scope of coverage." *Nat'l Fire Ins. Co. v. Ent. Specialty Ins. Svcs.*, 485 F. Supp. 2d 737, 740-41 (N.D. Tex. 2007). Once an insured meets this burden and demonstrates the potential for coverage under the policy at issue, an insurer may then establish that no duty to defend exists due to exclusions from the policy. *See Harken Exploration Co. v. Sphere Drake Ins. P.L.C.*, 261 F.3d 466, 471 (5th Cir. 2001) (citing *Federated Mut. Ins. Co. v. Grapevine Excavation, Inc.*, 197 F.3d 720, 723 (5th Cir. 1999)). "If the insurer is successful, the burden [again] shifts back to the insured to show that an exception to the exclusion brings the claim against her potentially within the scope of coverage under the insurance policy." *Id*.

### 1. Is the Claim Within the Scope of Coverage?

Defendants argue that even if the Focus Group received coverage as "named insured" as

---

[1] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986); *Merritt-Campbell, Inc. v. RxP Prods., Inc.*, 164 F.3d 957, 961 (5th Cir. 1999).

Plaintiffs allegedly requested, the Indian Harbor Policy would not have provided coverage for the underlying Oklahoma litigation. Doc. 61 at 13. Plaintiffs disagree and assert that at least some of the damages suffered by the focus group arise from covered behavior. Doc. 64 at 16. In short, the parties disagree over the extent of coverage that the Indian Harbor Policy provides to named insureds.

To understand what is insured, the Court looks to Texas case law. "In exchange for premiums paid . . . insurers typically promise to defend and indemnify their insureds for covered risks." *Zurich Am. Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487, 490 (Tex. 2008). Texas courts apply the "eight corners" or "complaint-allegation" rule to determine whether an insurer has a duty to defend an insured. *GuideOne Elite Ins. Co. v. Fielder Road Baptist Church*, 197 S.W.3d 305, 308 (Tex. 2006); *Nokia*, 268 S.W.3d at 491; *Northfield Ins. Co. v. Loving Home Care, Inc.*, 363 F.3d 523, 528-35 (5th Cir. 2004). Under the rule, an insurer's duty to defend "is determined by the third-party Plaintiff's pleadings, considered in light of the policy provisions, without regard to the truth or falsity of those allegations." *GuideOne Elite Ins. Co.*, 197 S.W.3d at 308. But "the label attached to the [underlying] cause of action . . . does not determine the duty to defend." *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 13 (Tex. 2007). Rather, "'[i]t is the factual allegations instead of the legal theories alleged which determine the existence of a duty to defend.'" *Nokia*, 268 S.W.3d at 495 (quoting 14 COUCH ON INSURANCE § 200:19). "If a complaint potentially includes a covered claim, the insurer must defend the entire suit." *Nokia*, 268 S.W.3d at 491. Stated differently, "'when there are covered and non-covered claims in the lawsuit, the insurer is obligated to provide a defense to the entire suit.'" *Id.* at 495 (quoting 22 HOLMES' APPLEMAN ON INSURANCE 2D § 136.2(D)). The Court must therefore determine whether there is an independent factual contention that is covered by the Indian Harbor Policy.

To make this determination, the Court must look to the language of the Policy:

### A.    WHAT IS COVERED

Subject to all terms and conditions of this policy, **We** will pay on **Your** behalf all **Damages and Defense Expenses** . . . arising out of a **Claim** that **You** first become aware of and report to **Us** in writing during the **Policy Period** for a **Wrongful Act** . . . .

### E.    DEFINITIONS

2.  **Claim** means any demand received by **You** for money, services, or any other thing of value arising out of **Your** acts, errors or omissions in providing **Professional Services**. . . .

13.  **Professional Services** means services **You** perform for a client for a fee or commission, if performed in accordance with all licenses required by applicable law or regulation, in **Your** capacity as a **Registered Investment Advisor**, including:

  . . .

  d. **Professional Supervision**.

14.  **Professional Supervision** means the **Broker-Dealer's** oversight and direction of the performance of its **Registered Representatives**, and/or its creation, implementation, enactment and enforcement of supervisory procedures required by law, regulation, governmental or regulatory authority, self regulatory authority, including but not limited to, the Financial Industry Regulatory Authority (FINRA) and the Securities and Exchange Commission (SEC).

19.  **Selling Away** means the offering for sale or sale of **securities** or other investment products that are not approved by or offered by the **Named Insured**.

20.  **Wrongful Act** means any actual or alleged negligent act, error, omission, misstatement, misrepresentation or breach of duty by **You**, or by any person other than **You** for whose actions **You** are legally responsible, in rendering or failing to render **Professional Services** for clients of the **Named Insured**.

Doc. 52 at 11-23.

Plaintiffs contend that the Focus Group would be covered because the Policy provides coverage to a named insured for a **Wrongful Act**, which includes coverage for **Professional Services**, which includes **Professional Supervision** within its definition. Doc. 64 at 17. Plaintiffs thus conclude that "[a] wrongful act then under the [Indian Harbor] Policy would include any actual or alleged negligent act, error, omission, misstatement, misrepresentation or breach of duty by a named insured in rendering or failing to render professional supervision for clients of the named insured." *Id.* Defendants challenge this interpretation, contending that a wrongful act must be based on a negligent act, an error or omission, misrepresentation, or breach of duty, and that the Oklahoma litigation is based on fraudulent and intentional acts. Doc. 61 at 16. Plaintiffs agree that some of the claims involve intentional acts by former employee-advisor Larry Dearman and are thus not covered by the Policy; however, Plaintiffs maintain that "it is clear that some of the allegations, if taken as true, trigger coverage." Doc. 64 at 18. Specifically, Plaintiffs point to factual allegations in the Oklahoma litigation in which the Oklahoma plaintiffs seek damages based on the Focus Group's failure to professionally supervise Larry Dearman. Doc. 64 at 25-28.

The Court agrees with Plaintiffs. Having looked at these allegations, the Court concludes that at least one of the factual allegations for failure to professionally supervise is included in the Indian Harbor Policy. *See id.* For example, one Oklahoma case alleges that Dearman suffered from a gambling addiction and that his addiction was known to the Focus Group and other managers of the Focus Group so that action should have been taken to protect their clients. *Id.* at 28. This alone sufficiently alleges negligent behavior for a wrongful act. *Id.* at 28. Furthermore, a single factual allegation for a covered claim is all that is needed for a duty to defend to be triggered. *Canutillo Indep. Sch. Dist. v. Nat'l Union Fire Ins. Co.*, 99 F.3d 695, 701 (5th Cir. 1996) (citing *Rhodes v. Chicago Ins. Co.*, 719 F.2d 116, 119 (5th Cir. 1983)).

### 2. Do the Exclusions Apply?

Defendants next argue that all of the claims in the Oklahoma litigation are specifically excluded by the Policy. Doc. 61 at 18. Now that Plaintiffs have met their initial burden of showing that there is evidence of potential coverage, it is Defendants' burden to show that the claim falls within an exclusion. *See Harken*, 261 F.3d at 471. In making their argument, Defendants point to the following policy exclusions:

> **F. Exclusions**
>
> 4. Arising out of the actual or alleged purchase, sale, attempted sale, solicitation or servicing of any of the following:
>
>> c. Any equity **Security** not listed on the New York Stock Exchange, NASDAG, American Stock Exchange or similar national securities exchange at the time of the alleged act, error or omission giving rise to such a Claim.
>>
>> h. Arising out of . . . Limited Partnerships, non-publicly traded Real Estate Investment Trusts ("REITs"), promissory notes, issuer callable certificates of deposit and/or equipment sale-lease-buy-back transactions.
>
> 13. Arising out of investment products partially or totally owned or controlled by any **Insured**, or to **Securities** for which the **Insured** acts as a **Market Maker**; or based upon, alleging, arising out of, based upon or attributable to the **Insured** failing to disclose its status as a **Market Maker** in connection with any research or recommendations provided to a customer or client of the Insured **Broker-Dealer**.
>
> 20. Arising out of or attributable to any intentional, dishonest, fraudulent, criminal, malicious or purposeful act or omission or any willful violation of any statute, rule or law by any **Insured**.
>
> 25. Arising out of any activities of or services provided by a **registered Representative** which are not **Professional Services** rendered on behalf of the **Broker/Dealer**, including without limitation **Selling Away** by a **registered Representative**.

Doc. 62 at 14-15.

Defendants contend that "every one of the [Oklahoma] Cases is based on promissory notes, unregistered securities, and fraudulent activity" and that all of the claims therefore arise from an excluded transaction. Doc. 74 at 9. In support of their argument, Defendants catalog the nature of losses in the Oklahoma litigation and show that that all of the losses arise from an excluded transaction. Doc. 52-2 at 45, Ex. 16. Defendants also cite to *Canutillo Indep. Sch. Dist. v. Nat'l Union Fire Ins. Co.*, 99 F.3d 695, 701 (5th Cir. 1996). In that case, the Fifth Circuit stated that "[w]e find that Texas law is clear; where a claim against an insured would not exist 'but for' conduct explicitly excluded by the policy, the dependent claims are also not covered under the policy, regardless of whether the insured against whom the derivative claims are directed actually engaged in the excluded acts." *Id.* at 704-05.

The instant facts are similar to an opinion from a court in the Southern District. *Hiscox Dedicated Corporate Member Ltd. v. Partners Commer. Realty, L.P.*, No. H-08-3411, 2009 U.S. Dist. LEXIS 53686 at *1 (S.D. Tex. 2009). In *Hiscox*, a group of insureds were sued for securities fraud from the sale of interests in a limited partnership. *Id.* Their insurance policy excluded claims arising out of violations of various federal and state securities laws and regulations and for claims arising from the sale of interests in limited partnerships. *Id.* at 5-6. The insureds argued that because the plaintiff in the underlying case brought a claim for negligent misrepresentation, the exclusion did not apply. *Id.* at 25. The court concluded, however, that the same excluded conduct gave rise to both claims. *Id.* Citing the above language from *Canutillo*, the court held that the claims were excluded under the policy. *Id.* at 25-26.

Plaintiffs respond to Defendants' argument that the Oklahoma cases against the Focus Group all allege claims that arise out of excluded conduct by breaking down the allegations in the Oklahoma cases. *See* Doc. 64 at 19. They argue that the sale of an approved investment product

that later led to the purchase of an excluded investment product would have already triggered coverage for alleged breaches of professional supervision. *Id.* at 19-20. They state that "[a]ccording to the petitions, had Dearman been properly supervised during this time, the plaintiff's damages could have possibly been prevented." *Id.* at 20. In other words, Plaintiffs make a chicken-or-egg type argument that the excluded conduct arose from covered conduct, rather than the other way around. *See id.*

Plaintiffs also cite to a case that came to a different conclusion than *Hiscox* and *Canutillo*. *Endurance Am. Specialty Ins. Co. v. Bowen, Miclette & Britt, Inc.*, No. H-09-2307, 2010 U.S. Dist. LEXIS 176 at *1 (S.D. Tex. 2010). In *Endurance*, the disputed policy also included an exclusion for any claim "'based upon or arising out of any violation or alleged violation' of federal or state securities laws. *Id.* at *7. But the underlying plaintiffs also asserted common law negligence claims. *Id.* Unlike in *Hiscox*, the *Endurance* court held that there was significant potential in the underlying lawsuits that the factfinders could find that the insured merely acted negligently and could therefore be found liable for negligence and not securities violations. *Id.* at 10. In other words, the court held that the negligence claim did not arise out of the alleged violation of securities laws—the claims could be separated.

The Court is unconvinced by Plaintiffs' arguments and finds that the instant facts are more like the facts in *Hiscox* than *Endurance*. Plaintiffs' attempt to dissect the transactions in order to show that the allegations are independent ignores the fact that the source of the alleged losses is the investment of funds in excluded transactions—no losses would have occurred and the Oklahoma litigation "would never have been brought" absent the excluded conduct. *Canutillo*, 99 F.3d at 704 (quoting *Garrison v. Fielding Reinsurance, Inc.*, 765 S.W.2d 536, 538 (Tex. App.— Dallas 1989, writ denied)). The sale of a covered investment in and of itself creates no loss. The

loss, therefore, did not occur until the Focus Group, through Dearman, engaged in excluded conduct. *See* 52-2 at 45, Ex. 16.

Plaintiffs then argue that the policy is ambiguous or illusory. Doc. 64 at 30. First, they state that the Indian Harbor Policy "should have been modified to reflect the fact that the policy was not intended to provide coverage to a broker-dealer but to registered investment advisor firms and including their investment advisor representatives." *Id.* In support, Plaintiffs cite to statements by Chen that the definition of professional supervision should have been changed. *See* Doc. 71 at 96-97. Plaintiffs then argue that if the policy is not modified, it is ambiguous because it is inconsistent with the parties' intent. Doc. 64 at 30. They also contend that it is illusory because "Plaintiffs would not receive any coverage under any circumstances." *Id.*

Whether the Indian Harbor Policy includes a clerical error makes no difference to the Court's analysis. Plaintiffs' claims are based on their request that the Focus Group be covered as a "named insured." Doc. 27 at 6, ¶ 31. And the Court has found that the Policy did provide coverage for named insureds for professional supervision. *See Supra* Part III.B.1. The Court concludes that even if Focus Group were a named insured, its defense costs would not be covered due to a policy exclusion. Chen's conclusion about a clerical error, however, is in regard to whether Focus Group would have been covered for professional supervision. *See* Doc. 71 at 96. Therefore, even though an ambiguity may exist with regard to the Policy's inclusion section, the Policy still bars coverage through the exclusion section so that Plaintiffs' losses were not caused by any failure to procure the sought-for policy.

For the above reasons, the Court grants Defendants' motion for summary judgment. Because all of the claims are now resolved, the Court need not address the Defendants' motion to exclude.

## IV.    Conclusion

For the foregoing reasons, the Court GRANTS Defendants' motion for summary judgment (doc. 60) and finds MOOT Defendants' motion to exclude (doc. 42).

**IT IS SO ORDERED.**

Signed this 4ᵗʰ day of January, 2016.

JORGE A. SOLIS
UNITED STATES DISTRICT JUDGE